# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Stendera v. State Farm Fire & Casualty Co.*, 2012 IL App (1st) 111462

---

| | |
|---|---|
| Appellate Court Caption | AGNIESZKA STENDERA and MATT DAJEWSKI, Plaintiffs and Counterdefendants-Appellants, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Counterplaintiff-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1462 |
| Filed | June 15, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over plaintiffs' claims under their homeowners' policy for the fire damage to their house, the trial court properly determined that defendant insurer was entitled to set off against plaintiffs' personal property claim defendant's advance payment under the personal property coverage, the payment of the security deposit for a temporary dwelling under the dwelling coverage and the amount paid pursuant to the mortgagee's proof of loss for damages to the dwelling less the amount of the receipts plaintiffs submitted for the repair of the dwelling, but summary judgment was improperly entered for defendant, since a genuine issue of material fact existed as to the cost of the repairs. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-4284; the Hon. Bill Taylor, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on
Appeal

Peter C. Morse, Matthew J. Kowals, and Daniel J. James, all of Morse Bolduc & Dinos, of Chicago, for appellants.

Daniel J. Nolan, Elizabeth M. Dillon, Luke P. Sheridan, and Kevin C. Rasp, all of O'Hagan Spencer, LLC, of Chicago, for appellee.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.

Presiding Justice R. Gordon and Justice Garcia concurred in the judgment and opinion.

## OPINION

¶ 1  Plaintiffs Agnieszka Stendera and Matt Dajewski appeal the trial court's entry of summary judgment in favor of defendant State Farm Fire and Casualty Company. The trial court's ruling was based on its finding that plaintiffs suffered no loss following a fire that damaged their home because defendant had overpaid under its policy and was entitled to a setoff in the amount it had paid to plaintiffs' mortgagee less the amount actually expended to repair the home. We reverse and remand.

¶ 2                                      BACKGROUND

¶ 3  Defendant issued plaintiffs a homeowner's insurance policy (Policy) containing three coverages of relevance to this case: "Coverage A–Dwelling" (Dwelling coverage), with a separate limit of $390,000; "Coverage B–Personal Property" (Personal Property coverage), with a separate limit of $292,500; and "Coverage C–Loss of Use," with the amount being the actual loss sustained. "Coverage A–Dwelling" provides:

"1. A1–Replacement Cost Loss Settlement–Similar Construction.

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION 1–COVERAGES, COVERAGE A–DWELLING, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less[.]"

-2-

¶ 4 The Policy also contains a "Mortgage Clause" (Mortgage clause), which states: "If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear." The Mortgage clause further provides that if the insured's claim is denied, "that denial shall not apply to a valid claim of the mortgagee."

¶ 5 A fire subsequently damaged plaintiff's residence located at 1205 Wilmot Road in Deerfield, Illinois (Property). Plaintiffs informed defendant, which issued plaintiffs a check for $5,000 as an advance on their personal property claim. Defendant also issued plaintiffs a check for $3,395 to use as a security deposit for temporary housing. Plaintiffs claimed $123,765.68 in damages to their personal property under the Personal Property coverage of the Policy. Defendant refused to provide plaintiffs with further payments, alleging that plaintiffs had intentionally caused the fire.

¶ 6 On April 9, 2009, plaintiffs filed suit alleging defendants breached the terms of the Policy by denying coverage for their claims.

¶ 7 On or about May 6, 2009, Wells Fargo submitted a sworn proof of loss to defendant, making a claim as the mortgagee. Defendant paid $174,191.24 to Wells Fargo under the Mortgage clause section of the Policy on August 7, 2009. In their briefs the parties contest whether this amount was the "actual cash value" of the damage to plaintiffs' home (plaintiffs' argument) or an "estimate of the actual cash value of the repairs to the property necessitated by the fire" (defendant's argument). In its brief defendant states that the "estimate of the actual cash value of the repairs was based on plaintiffs' misrepresentations relating to the remodeling of their residence prior to the fire." At oral argument counsel for defendant also argued that the $174,191.24 payment defendant made to Wells Fargo was based on plaintiffs' misrepresentations that they remodeled their home prior to the fire. We note that the issue regarding the allegation of misrepresentations concerning the cost of remodeling was not briefed below and we will not address it here.[1]

¶ 8 On December 17, 2009, plaintiffs submitted to Wells Fargo a "Certificate of Completion of Repairs" wherein plaintiffs certified that all necessary repairs resulting from damage sustained at the Property had been completed and the house was "restored to the condition existing prior to the date of damage."

¶ 9 On January 4, 2010, Wells Fargo transferred the $174,191.24 it received under the Mortgage clause to plaintiffs.

¶ 10 During written discovery defendant requested "[a]ll records and documents relating to the repair of any portion of the [Property] damages as a result of the August 1, 2008 fire." Plaintiffs objected to the request on relevance grounds, stating: "[Defendant] has already disbursed payment for the structural damages to Wells Fargo in the amount of $174,191.24, and as such the structural damages are no longer in issue."

¶ 11 Plaintiffs eventually provided defendant with copies of receipts totaling 30,837.61 regarding the repair of the Property. In a June 25, 2010 letter, counsel for plaintiffs informed

---

[1] See *Forest Preserve District v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 67 (issues not presented to the trial court are forfeited and will not be considered by the appellate court).

defendant that plaintiffs would not appear for further depositions on the issue of the repair costs of the Property because that information was irrelevant to plaintiffs' claim for damage to their personal property. Defendant subsequently filed a motion to bar additional evidence of the expenses plaintiffs incurred for repairs above the $30,837.61 in receipts plaintiffs provided defendant. The court did not rule on the motion.

¶ 12       On August 4, 2010, defendant filed a counterclaim for setoff, alleging it was entitled to set off any judgment entered in favor of plaintiffs by the amount defendant paid to Wells Fargo as well as the $5,000 payment defendant made to plaintiffs as an advance toward their personal property claim.

¶ 13       On September 23, 2010, defendant moved for summary judgment on the setoff claim. Defendant contended that plaintiffs had received $182,586.24: $5,000 advance payment from defendant under the Personal Property coverage; $3,395 from defendant for the security deposit on plaintiffs' temporary home under the Dwelling coverage; and $174,191.24 from Wells Fargo for the damage to plaintiffs' home. Defendant argued that it was entitled to set off the amount it had paid to Wells Fargo, less the $30,837.61 expended for repairs, against plaintiffs' $123,765.68 personal property claim. The court denied defendant's motion for summary judgment, and defendant moved to reconsider. Plaintiffs filed a cross-motion for summary judgment on defendant's claim for setoff.

¶ 14       On April 14, 2011, the court issued a written order granting defendant's motion to reconsider and entered summary judgment in its favor. The court found defendant was entitled to a setoff and, as a result, had overpaid in the amount of $27,982.95, which is the difference between the $182,586.24 plaintiffs received for damages caused by the fire ($174,191.24 paid to Wells Fargo plus $8,395 defendant issued directly to plaintiffs) and the $154,603.29 in damages plaintiffs actually claimed ($123,765.68 in personal property damages plus $30,837.61 plaintiffs had provided in receipts for repairs to their home). The court concluded that pursuant to the Policy, and as the undisputed damages did not exceed the amount of the setoff, summary judgment in favor of defendant was proper. The court also denied plaintiffs' cross-motion for summary judgment.


¶ 15                                          ANALYSIS

¶ 16       On appeal, plaintiffs contend that nothing in the Policy allows defendant to set off the amount it owes under the Personal Property coverage by the amount it had paid under the Dwelling coverage. Specifically, plaintiffs argue that their $123,765.68 personal property claim must be evaluated independently of the $174,191.24 defendant paid to Wells Fargo under the Dwelling coverage, and that defendant had no independent cause of action to recover any overpayment on the Dwelling coverage. Plaintiffs also argue in the alternative that if defendant was entitled to bring a cause of action against them for setoff, summary judgment was inappropriate because there is at least a question of fact regarding the amount plaintiffs spent on repairs and the value of their labor.

¶ 17       Summary judgment is only appropriate where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

735 ILCS 5/2-1005(c) (West 2010); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is a drastic measure and should only be allowed where the right of the moving party is clear and free from doubt. *Williams*, 228 Ill. 2d at 417. We review the trial court's grant of summary judgment *de novo*. *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 40 (citing *Williams*, 228 Ill. 2d at 417).

¶ 18    An insurance contract is a contract of indemnity. *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 200 (2010) (citing *Imperial Fire Insurance Co. of London v. Coos County*, 151 U.S. 452, 462 (1894)). The purpose of damages stemming from a contract breach is to place the nonbreaching party in the position he would have been in had the contract been performed, but not to place him in a better position or provide him with a windfall recovery. *Feldstein v. Guinan*, 148 Ill. App. 3d 610, 613 (1986). The law does not allow for an insurance loss to turn into a profit because doing so would encourage arson or neglect. See, *e.g.*, *Farmers Automobile Insurance Ass'n v. St. Paul Mercury Insurance Co.*, 482 F.3d 976, 978-79 (7th Cir. 2007) ("[n]o insurance company would knowingly write a policy that would enable the insured to trigger coverage any time it wanted a windfall").

¶ 19    As a preliminary matter, we address plaintiffs' argument that defendant is not entitled to set off the amount it had paid to Wells Fargo, less the $30,837.61 expended for repairs, against plaintiffs' $123,765.68 personal property claim. Because this is a contract action, a setoff ordinarily would be allowed if a plaintiff was paid more than his damages. See *Walker v. Ridgeview Construction Co.*, 316 Ill. App. 3d 592, 596 (2000) (compensation awarded in a breach of contract action should not provide a plaintiff with a windfall). The term "setoff " has two distinct meanings. First, a "setoff" may refer to a situation when a defendant has a distinct cause of action against the same plaintiff who filed suit against him, which is subsumed procedurally under the concept of counterclaim. See *Thornton v. Garcini*, 237 Ill. 2d 100, 113 (2009). Under this meaning, a setoff may refer to a situation where the defendant claims that the plaintiff has done something that results in a reduction in the defendant's damages. *Thornton*, 237 Ill. 2d at 113. "When a defendant pursues this type of setoff, the claim must be raised in the pleadings." *Thornton*, 237 Ill. 2d at 113.

¶ 20    Under its second meaning, a "setoff" may refer to a defendant's request for a reduction of the damage award because a third party has already compensated the plaintiff for the same loss. *Thornton*, 237 Ill. 2d at 113. For example, this may occur when a codefendant who would be liable for contribution settles with the plaintiff. *Thornton*, 237 Ill. 2d at 113. A defendant may raise this type of setoff at any time. *Thornton*, 237 Ill. 2d at 113.

¶ 21    Plaintiffs argue that the trial court erred in crediting defendant with a setoff in the amount defendant paid to Wells Fargo under the Policy less the amount actually expended for repairs. In setting forth this argument, plaintiffs rely on *Fittje v. Calhoun County Mutual County Fire Insurance Co.*, 195 Ill. App. 3d 340 (1990).

¶ 22    In *Fittje*, a married couple entered into a contract for deed to purchase a home. *Fittje*, 195 Ill. App. 3d at 342. The couple procured an insurance policy that named both themselves and the sellers. *Fittje*, 195 Ill. App. 3d at 342-43. Less than a year later, the home was destroyed by a fire. *Fittje*, 195 Ill. App. 3d at 343. The insurer paid $56,930 to the sellers under the policy but denied coverage to the couple because the insurer's investigation suggested that

the fire had been intentionally started by the wife. *Fittje*, 195 Ill. App. 3d at 343. The couple filed suit, seeking enforcement of the coverage under the policy. *Fittje*, 195 Ill. App. 3d at 343. The insurer filed a counterclaim against the couple in the amount of $56,930, the sum it had paid to the sellers. *Fittje*, 195 Ill. App. 3d at 343. The trial court found that the husband was an innocent insured who was not responsible for the fire and, under the innocent-insured doctrine, awarded him half of the coverage due under the policy ($50,992), then set off the amount paid to the sellers ($56,930). *Fittje*, 195 Ill. App. 3d at 345. The couple appealed.

¶ 23    The Fourth District Appellate Court affirmed the trial court's decision but held that the setoff could not be applied to the sum awarded to the husband for the loss of his personal property and living expenses. *Fittje*, 195 Ill. App. 3d at 346. In doing so, the court noted that the insurer would avoid liability for the innocent insured's personal property and living expense coverage if the insurer were permitted to set off the entire amount it paid to the sellers. *Fittje*, 195 Ill. App. 3d at 346. The court in *Fittje* also noted that such a result would "abrogate[ ] the innocent-insured doctrine and permit[ ] the insurer to escape a portion of its contractual obligation." *Fittje*, 195 Ill. App. 3d at 346. The court refused to "permit such a result to stand" and applied the setoff only to the innocent husband's recovery for damage to the home. *Fittje*, 195 Ill. App. 3d at 346. In reaching this conclusion, the *Fittje* court reiterated that a "setoff is not to indemnify the insurer for sums paid on behalf of the plaintiffs, but to prevent a multiple recovery by different parties for a single loss." *Fittje*, 195 Ill. App. 3d at 347.

¶ 24    Here, unlike *Fittje*, the innocent-insured doctrine is not implicated and we are not confronted with the task of reaching an equitable result for an innocent spouse. Rather, this case concerns a basic indemnity analysis under the Policy. Notably, the Policy here does not preclude a common law setoff, regardless of whether it is across coverage lines. However, even assuming that a setoff would not be allowed under the second definition found in *Thornton* because defendant's coverage for the third party (Wells Fargo) was not for the "same loss," a setoff would still be allowable under the first definition set forth in *Thornton* because it is a separate action brought by way of counterclaim. We note that defendant here pursued this type of setoff by raising it in a counterclaim against plaintiffs. As a result, the trial court did not err in finding that defendant would be entitled to a setoff in the event that the amount it paid exceeded the cost of repair. That said, we next consider whether the trial court could resolve this question based on the pending cross-motions for summary judgment.

¶ 25    After carefully reviewing the record, we find that the trial court improperly entered summary judgment as we believe there remains a genuine issue of material fact as to the amount actually expended for repairs to the home. The court essentially ruled that plaintiffs suffered no loss and would receive a windfall in the absence of a setoff. In coming to this conclusion the court relied on a supposed stipulation that only $30,837.61 was expended to restore the property. The court stated, "[f]or the purposes of summary judgment, the parties stipulated the following: (1) the actual cash value of Plaintiffs' personal property claim is $123,765.68; (2) Plaintiffs spent $30,837.61 to repair the property; (3) Plaintiffs' damages total $154,603.29; and (4) Plaintiffs received $182,586.24 for damages caused by the fire." However, the parties agreed at oral argument that no such stipulation existed and there is no written stipulation in the record. In fact, plaintiffs refused to comply with discovery requests

with regard to repairs, claiming that it was irrelevant as they were no longer pursuing a structural loss claim. Defendant filed a motion to bar evidence of such repairs but that motion was not ruled upon. Plaintiffs contest the $30,837.61 figure and claim much higher costs, including labor.

¶ 26     Whether or not plaintiffs actually spent more than the $30,837.61 claimed by defendant is a genuine issue of material fact precluding summary judgment, as that figure must be determined to conclude whether or not plaintiffs have received a windfall. That figure needs to be determined in the trial court unless the court agrees that plaintiffs' refusal to cooperate in discovery barred them from asserting a higher number. As a result, we direct the trial court upon remand to first decide defendant's motion to bar and, if denied, to decide the amount actually expended for repairs without referring to a stipulation that does not appear to be in the record or agreed to by the parties.

¶ 27                                    CONCLUSION

¶ 28     We conclude that the trial court properly found that defendant was allowed to set off the amount it paid to Wells Fargo less the amount expended for repairs but erred in granting summary judgment to defendant because there remains a genuine issue of material fact as to the amount actually expended for repairs. We remand for further proceedings consistent with this opinion.

¶ 29     Reversed and remanded with directions.